IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Eugene Peter Schuler, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23-cv-1811 (LMB/WEF) |
| | ) | |
| Sgt. Branch, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION</u>

Virginia inmate Eugene Peter Schuler ("plaintiff") is a repeat <u>pro se</u> litigant.[1]  <u>See</u> www.pacer.gov (last viewed Mar. 10, 2026; searched for "Schuler, Eugene").  In this civil action, brought under 42 U.S.C. § 1983, plaintiff's Amended Complaint seeks $2 million in damages for excessive force in violation of the Eighth Amendment when state prison guard Sergeant Branch allegedly closed a cell door tray slot on plaintiff's fingers and pepper-sprayed him.  [Dkt. No. 15 ("Amended Complaint")].  Although plaintiff's Amended Complaint also asserted causes of action against three other defendants relating to the same incident, the Court dismissed those claims with prejudice for failure to state a claim upon which relief may be granted.[2]  Consequently, there is only one defendant and one claim remaining in this action.

Sergeant Branch ("defendant") has filed a Motion for Summary Judgment ("Motion").  Plaintiff was advised of his right to file an opposition to the Motion as well as the requirement that, to "contest any fact," he "must clearly indicate disagreement with that fact and either cite to

---

[1] Plaintiff does not appear to have won significant relief in any of the six habeas cases and civil actions that he has filed in this Court or in any of the nine appeals that he has filed in the Fourth Circuit.

[2] The Amended Complaint also asserted claims against one defendant, Lieutenant Richardson, which were unrelated to the pepper-spraying incident.  Accordingly, the Court severed those claims and dismissed them without prejudice.  [Dkt. No. 37] at 6-7.

evidence in the record or provide an affidavit made under the penalty of perjury that supports plaintiff's disagreement." [Dkt. No. 42]. Schuler filed multiple motions to extend the time in which to file his opposition and the Court granted him, in total, an additional three months to respond. Schuler filed a Brief in Opposition and supporting materials, including an Affidavit that was not made under the penalty of perjury. [Dkt. Nos. 54, 54-1, and 54-2]. The Motion has been fully briefed and the Court has determined that oral argument will not further the decisional process. For the reasons discussed below, defendant's Motion for Summary Judgment will be granted.

I.

In support of his Motion for Summary Judgment, defendant submits his own affidavit, the affidavits of a postal clerk and an agency management analyst, and the declaration of an institutional investigator at Sussex I State Prison ("Sussex I"). The affidavits were sworn and subscribed to before a notary public and the declaration was made under the penalty of perjury. The documents set forth the following facts.

Plaintiff is an inmate who was incarcerated at Sussex II State Prison ("Sussex II")[3] from April 5, 2021 to November 14, 2023. [Dkt. No. 41-3] at ¶ 5. On the morning of November 23, 2021, defendant was conducting a security check in the 3B pod at Sussex II, where plaintiff was housed. [Dkt. No. 41-1] ("Branch Aff.") at ¶ 4. Tray slots are used for delivering food to inmates without opening cell doors and, per VDOC rules and policies, they must be closed to prevent inmates from assaulting staff and throwing objects or bodily waste through them. See id. at ¶¶ 5 and 7. As defendant was attempting to secure plaintiff's tray slot, plaintiff "picked up the food tray that was on the tray slot and attempted to throw it at defendant," id. at ¶ 4, "while using vulgar language and physically banging on the cell door and causing a disturbance," [Dkt. No.

---

[3] Sussex II closed on July 1, 2024.

41-2] ("Dunlevy Aff.") at ¶ 4.  Defendant extended his left hand to prevent the tray from hitting him and administered a "one-half second burst of [pepper] spray . . . through the cell door tray slot."  Branch Aff. at ¶ 5.  Because defendant "perceived an immediate risk to [his] safety and well being," he used the pepper spray to "prevent Schuler from making any additional attempts to assault or grab [him] and so that Schuler would back away from the tray slot so that [the defendant] could secure it."  Id. at ¶¶ 4 and 8.  Defendant then stepped away from plaintiff's cell door, reported the incident to HU3 Building Commander Lieutenant Coleman, and left the pod.  Id. at ¶ 5; Dunlevy Aff. at ¶ 4.  Plaintiff was offered a shower to decontaminate, a nurse responded to assess Schuler's condition, and no injuries were reported by either party.  Dunlevy Aff. at ¶¶ 4-6 and p. 3.

In his opposition brief to defendant's Motion for Summary Judgment, Schuler identifies the facts asserted by defendant with which he disagrees and submits an unverified affidavit setting forth his version of the incident on November 23, 2021.  [Dkt. No. 53] ("Pl.'s Aff.").  Specifically, plaintiff's affidavit states as follows:

> 4.  The Defendant was attempting to fix the trayslot [sic] while I was asking him not to so that I could speak to his supervisors, the Multi-Disciplinary Team (MDT). He ignored me and continued trying to fix it.  I then slid the slot open and attempted to place my hand on the rim of the trayslot.  When I noticed my breakfast tray had not been removed, I removed it and placed it as close to the ground as possible.  I then placed my hand on the rim [of the slot] so that Branch couldn't close it.  He then closed it on my hand.  I yanked my hand in as fast as I could.  As I was cradling my hand in pain, I heard the slot open and when I looked at the slot he mased [sic] me directly in the face.
>
> 5.  I remember seeing the look on his face while I was talking to him.  He seemed irritated, and I could not move my hand fast enough.  I'm not only saying malice because it's an element to be proven, it's something I seen [sic] in his facial expression (eyes) while I was holding the rim slot.
>
> 6.  Defendant Branch made no verbal commands/warnings.
>
> 7.  I was not banging or cursing whatsoever.

3

8. I did not attempt or hit Defendant with a tray or anything else.

9. Everything stated in my brief is true and correct to the best of my ability.
Id.

Attached to Schuler's opposition brief are documents related to the tray slot incident—

specifically, the Incident Report, Internal Incident Report, plaintiff's Written Complaint,

Offender Grievance Response - Level I, Offender Grievance Response - Level II, and

Disciplinary Hearing Appeal Response. [Dkt. No. 54-2]. On December 7, 2021, Schuler

submitted a Written Complaint in which he describes how defendant "slammed the lid [of the

tray slot] on [his] fingers causing numerous cuts on both sides of [his] fingers" and then "opened

the lid and proceeded to mase [sic] him." [Dkt. No. 54-2] at 10. Approximately one week later,

on December 15, 2021, plaintiff submitted a Regular Grievance requesting an investigation into

defendant's use of excessive force. [Dkt. No. 15-3]. On January 11, 2022, the Assistant Warden

of Operations issued an Offender Grievance Response - Level I, stating that an investigation had

been conducted into plaintiff's complaint and that plaintiff's grievance was determined to be

"UNFOUNDED." [Dkt. No. 54-2] at 5. Plaintiff appealed and, on February 1, 2022, the

Regional Administrator issued an Offender Grievance Response - Level II, upholding the finding

that plaintiff's grievance was unfounded and stating "Level II is the last level of appeal for this

grievance. You have exhausted all administrative remedies." Id. at 4.

Defendant submitted an Internal Incident Report alleging that plaintiff had assaulted him.

Although a hearing officer found Schuler guilty of "simple assault on a non-offender" on

December 2, 2021, [Dkt. No. 54-2] at 11, the Assistant Warden overturned that decision on

February 1, 2022, "due to a procedural error." Id.

4

II.

Federal Rule of Civil Procedure 56(c) provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Phoenix Sav. & Loan v. Aetna Cas. & Sur. Co., 318 F.2d 245 (4th Cir. 1967). Summary judgment is not a "disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp., 477 U.S. at 327. It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993). The Court must determine "whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The moving party has the initial burden of informing the Court of the legal basis for the motion and of pointing to the relevant portions of the pleadings, depositions, discovery responses, and affidavits which establish that there is no genuine issue of any material fact. Celotex Corp., 477 U.S. at 323. The movant must "mak[e] a prima facie showing that [he] is entitled to summary judgment." Id. at 331.

In the Fourth Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Here, Schuler has filed an unverified Amended Complaint.[4] "[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment."

---

[4] Plaintiff's original Complaint was also unverified.

See, e.g., Askins v. Belissary, No. 4:12-cv-1856-RBH, 2014 WL 507279, at *7 (D.S.C. Feb. 6, 2014), aff'd, 564 Fed. Appx. 46 (4th Cir. 2014).

As a general rule, the non-movant must respond to a motion for summary judgment with affidavits, or other verified evidence. Celotex Corp., 477 U.S. at 324; see also Williams, 952 F.2d at 823. An affidavit presented in opposition to a motion for summary judgment "must present evidence in substantially the same form as if the affiant were testifying in court." Evans v. Technologies Applications & Service Co., 80 F.3d 954, 962 (4th Cir. 1996). A party cannot ward off summary judgment with an affidavit "based on rumor or conjecture." Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989). Although Schuler submitted both an opposition brief and an affidavit to contradict defendant's version of the facts, they were not made under the penalty of perjury. Rather, Schuler's affidavit states:

- The information presented is based on my personal knowledge and experience, and is truthful to my best ability. Pl.'s Aff. ¶ 2.

- Everything stated in my brief is true and correct to the best of my ability. Id. at ¶ 9.

In the Roseboro notice sent to plaintiff, the Court explained that "to contest any fact that defendant cites as uncontested, plaintiff must clearly indicate disagreement with that fact and either cite to evidence in the record or provide an affidavit made under the penalty of perjury that supports plaintiff's disagreement. Failure to file a response that complies with these requirements could result in judgment being entered in defendant's favor." [Dkt. No. 42]. Because Schuler's Amended Complaint is unverified and his affidavit is not made under the penalty of perjury, they are legally insufficient to contradict defendant's version of the material facts. Moreover, as explained in more detail below, the records Schuler submits in support of his opposition brief do not create a genuine issue as to any material fact. Accordingly, the Court will view defendant's facts as undisputed.

6

Defendant has moved for summary judgment on the basis that plaintiff's claim is time-barred and plaintiff cannot establish either the subjective or objective element of an Eighth Amendment excessive force claim because defendant's actions were justified given plaintiff's noncompliance with prison rules and plaintiff did not suffer any injury from the incident.

A.      Statute of Limitations

Defendant argues that because plaintiff's original Complaint was mailed more than two years after the tray slot incident, plaintiff's claims are barred by Virginia's two-year statute of limitations for § 1983 claims. See [Dkt. No. 41] at 8-11.  Although plaintiff dated his original Complaint November 23, 2023, which is exactly two years from the date of the incident, the evidence shows that plaintiff did not place the Complaint in the prison mailing system until December 21, 2023. [Dkt. No. 41-4] at ¶¶ 6-7 (showing legal mail addressed to the U.S. District Court in Richmond, Virginia on December 21, 2023).  This is consistent with the December 21, 2023 postmark date on the envelope in which plaintiff's Complaint arrived, [Dkt. No. 1-6] at 2, and the December 28, 2023 docketing date of the Complaint.  Nevertheless, the date of the tray slot incident does not determine the timeliness of plaintiff's Complaint.  The Fourth Circuit has held that the limitations period for initiating an action under § 1983 is tolled while a prisoner is pursuing administrative remedies and that "a court must . . . determine the point of exhaustion and run the limitations period from that date." Battle v. Ledford, 912 F.3d 708, 720 (4th Cir. 2019).

The records attached to plaintiff's opposition brief show that plaintiff submitted a Complaint and Written Grievance regarding the tray slot incident in early December 2021, and that the Assistant Warden found plaintiff's grievance was unfounded on January 11, 2022. [Dkt. No. 54-2] at 5.  On February 1, 2022, that finding was upheld on appeal in a response stating, "[This] is the last level of appeal for this grievance.  You have exhausted all administrative

remedies." [Dkt. No. 15-1]. Because plaintiff filed his original Complaint within two years of his administrative remedies being exhausted, summary judgment on this ground is not warranted.

B.      Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. In the prison context, it "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996). An inmate's Eighth Amendment claim involves a subjective component and an objective component. "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Id. "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008).

To prove the subjective component, plaintiff must show that an officer acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). The state of mind required for excessive force claims is "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312,322 (1986). "Put differently, the core judicial inquiry regarding the subjective component of an excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Iko, 535 F.3d. at 239 (internal quotations and citation omitted).

In Whitley, the Supreme Court set forth four non-exclusive factors to assist courts in assessing whether an officer has acted with "wantonness"—(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any

8

efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321 (internal quotations omitted).

The Fourth Circuit's decision in Williams v. Benjamin provides additional guidance for courts when considering claims relating to the use of mace, tear gas, or other like substances. 77 F.3d 756 (4th Cir. 1996). Additional considerations inform the second and fourth prongs of the Whitley test, as "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary for the sole purpose of infliction of pain." Id. at 763. While the use of mace on prisoners confined in their cells is not per se unconstitutional, "it is necessary to examine the totality of the circumstances, including provocation, the amount of gas used, and the purpose for which the gas is used to determine the validity of the use of tear gas in the prison environment." Id.

As to the objective component of the test, an injury is "sufficiently serious" if it rises above the level of de minimis harm. Hudson v. McMillian, 503 U.S. 1, 9–10 (1992) (rejecting the argument that "minor" injuries are not actionable). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Id. at 9 (internal citation and quotations omitted).

Plaintiff acknowledges that he was intentionally interfering with defendant who was attempting to secure the tray slot in plaintiff's cell door. See [Dkt. No. 53] at 1. It is well-established that "[c]orrections officers act in a 'good faith effort to maintain or restore discipline'—that is, with a permissible motive—not only when they confront immediate risks to physical safety, but also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures." Brooks v. Johnson, 924 F.3d 104, 113 (4th Cir. 2019) (quoting Hudson, 503 U.S. at 6-7 (1992) (cleaned up)); see Bailey v. Turner, 736 F.2d

9

963, 970 (4th Cir. 1984) (rejecting rule that use of mace against recalcitrant inmate may be justified only by a threat to physical safety). Defendant can therefore demonstrate that there was a "need for the application of force." Similarly, it was reasonable for defendant to perceive plaintiff's noncompliant behavior as a safety threat given that plaintiff's attempt to keep the tray slot open created a risk that he would use the opening to assault prison staff or throw objects or bodily waste through the slot. This reasonably perceived threat necessitated the use of force to restore safety and order.

As to the relationship between the need and amount of force used and efforts to temper a forceful response, the Fourth Circuit has found that "[m]ace can be constitutionally used in small quantities to 'prevent riots and escapes' or to control a 'recalcitrant inmate.'" Williams, 77 F.3d at 763 (4th Cir.1996) (quoting Landman v. Peyton, 370 F.2d 135, 138 & n. 2 (4th Cir.1966)). "Because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials." Id. (internal quotations marks and citation omitted). Plaintiff does not dispute that the burst of pepper spray lasted no more than one half of a second, that he was offered a shower to decontaminate afterwards, and that a nurse visited him to assess his condition. [Dkt. No 41-1] at 2; [Dkt. No. 41-2] at 2. Based on these facts, defendant's limited use of mace to subdue Schuler was not disproportionate to the need for force and was a tempered response to the situation.

Plaintiff counters that defendant's use of pepper spray was not necessary to subdue him. According to plaintiff, defendant closed the tray slot on his hand, which caused plaintiff to "yank his [bleeding] hand into the cell to cradle the wounds." [Dkt. No. 54] at 4. Plaintiff claims that it was not until after plaintiff withdrew his injured hand from the slot that defendant pepper-sprayed him, which contradicts defendant's statement that he sprayed plaintiff to prevent another attack and to close the tray slot. Id. Although plaintiff's version of the facts may have been sufficient to create a genuine issue of material fact precluding summary judgment had plaintiff

10

made them under the penalty of perjury, he chose not to do so, despite the Court's explicit instructions in its Roseboro notice. The documents that plaintiff attaches to his opposition brief are also insufficient to create a fact issue because they contain the same unverified allegations. If anything, they support defendant's version of the facts as the grievance responses explained that there was "no evidence that [plaintiff's] fingers were injured" and that plaintiff's grievance was unfounded. [Dkt. No. 54-2] at 4, 5 ("there is no evidence to support your allegation that staff caused your injury"). Furthermore, the Disciplinary Hearing Appeal Response, which overturned a disciplinary action decision that Schuler was guilty of assaulting defendant, does not substantiate plaintiff's version of the incident because the Assistant Warden reversed the decision "due to procedural error" and not a substantive finding that plaintiff was not guilty of the offense. Id. at 11.

Finally, there is nothing in the record before the Court that shows anything more than de minimis injury. Investigator Dunlevy's Declaration states that "Nurse Taylor responded to the housing unit to assess Schuler. No injuries were reported of either party involved. . . . If Schuler or Branch had suffered any injury as a result of the November 23, 2021 altercation, this would have been detailed in an IR [Incident Report]." Dunlevy Aff. at ¶¶ 4 and 6. Dunlevy attached the Incident Report from that day, which states that "[n]o injury [was] reported of either party involved." Id. at 3. Even if plaintiff's unverified allegations about the cuts on his fingers were accepted as true, that would not be sufficient to support a claim of excessive force.[5] See Norman v. Taylor, 25 F.3d 1259, 1263-64 (4th Cir. 1994) (where inmate failed to establish more than de minimis injury (i.e., hand swelling and sore thumb) caused by deputy's swinging of keys at

_____

[5] Despite the lack of any evidence of injury, plaintiff seeks $2 million in damages, which is a strong indication of the meritless nature of his claims. See Anderson v. Pollard, 2020 WL 9349174, at *2 (E.D. Va. Aug. 24, 2020) (dismissing a cause of action as frivolous partly on the basis of a pro se plaintiff seeking $75,000,000 in damages).

inmate's hand, inmate could not maintain claim of excessive force in violation of Eighth Amendment).  Accordingly, plaintiff cannot prove the objective component of his claim.

III.

For these reasons, defendant's Motion for Summary Judgment will be granted [Dkt. No. 40] and judgment will be entered in defendants' favor by an Order to be issued with this Memorandum Opinion.

Entered this _16th_ day of March, 2026.

Alexandria, Virginia

_/s/_

Leonie M. Brinkema
United States District Judge